UNITED STATES of America, Libelant (plaintiff)

v.

An ARTICLE OF DRUG CONSISTING OF 30 INDIVIDUALLY CARTONED JARS, MORE OR LESS, of an article LABELED IN PART:

(carton)

"AHEAD HAIR RESTORER FOR NEW HAIR GROWTH Net Contents by Wt. 1 Oz. * * * A Most Amazing Cosmetic Discovery for Both Men And Women Directions and Informative Booklet Enclosed Kelly Products, Inc. * * * Royal Oak, Michigan * * *"

(jar)

"Ahead Kelly Products, Inc. * * * Royal Oak, Michigan Net Contents— 1 Oz. by Wt."

(insert)

"The long awaited answer * * * Directions * * *", Claimant (defendant).

Civ. A. No. 3340.

United States District Court
D. Delaware.
Oct. 18, 1967.

184

Alexander Greenfeld, U. S. Atty., L. Vincent Ramunno, Asst. U. S. Atty., Wilmington, Del., Paul M. Hyman, Dept. of Health, Education & Welfare, Food & Drug Div., Washington, D. C., for libelant (plaintiff).

David S. Keil and Ralph F. Keil, Keil & Keil, Wilmington, Del., Solomon H. Friend, Bass & Friend, New York City, Katz & Victor, Detroit, Mich., for claimant (defendant).

## OPINION

LAYTON, District Judge.

On April 4, 1967, the United States instituted proceedings pursuant to Section 305 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 335) to investigate possible criminal responsibility of the manufacturers and distributors of the product "Ahead" for alleged violations of the Act. Shortly thereafter, on April 10, 1967, the United States began this libel action for identical statutory violations (21 U.S.C. § 334). In due order, Ahead Kelly Products, Inc., filed its claim of ownership and its answer to the libel. In preparation for trial the United States and the claimant each propounded interrogatories to the other under Rule 33 of the Federal Rules of Civil Procedure. The parties have each objected to certain interrogatories of the other.

Claimant's objection to the government's interrogatories sound in the alternative. The initial ground is that:

"Where the government has filed a notice of hearing for investigation of possible criminal violation of the Federal Food, Drug and Cosmetic Act, it may not utilize interrogatories in a companion civil suit for identical violations of the said Act to compel the production of evidence for the criminal action. As such, all of the government's interrogatories are improper and should be stricken."

Alternatively, claimant objects to Interrogatories 1 through 9 [1] arguing that they are improper in that they seek to obtain admissions as well as interpretations of various representations and suggestions made in certain written documents. Further, claimant objects to Interrogatories 10 through 13 [2] contending

1. "1. Does claimant admit that:
(a) Exhibit A1 and A2 is a true and accurate copy of the label on the boxes containing single 1 Oz. jars of the 'Ahead' seized in this action;
(b) Exhibit B1 and B2 is a true and accurate copy of the package insert in the boxes of 'Ahead' seized in this action;
(c) Exhibit C is a complete, true, and accurate copy of words on the label on the 1 Oz. jars of 'Ahead' seized in this action.
"2. If the answer to 1(a), (b), or (c) is any other than an unqualified affirmative, then for each such answer state what claimant contends the true facts to be, and the name and address of each person having personal knowledge of the truth of each such fact.
"3. Does claimant admit that 'Ahead' is intended to be used on the human head for the purpose of growing hair on bald or thinning areas?
"4. Does claimant admit that Exhibits A1 and 2, B1 and 2, and C represent and suggest that 'Ahead' is for use on the human head for use in growing hair on bald or thinning areas?
"5. If the answer to Interrogatory No. 3 or 4 is other than an unqualified affirmative, then for each such answer state what claimant contends the true facts to be, and the name, address, and qualifications of each person having personal knowledge of the truth of such facts.
"6. Does claimant admit that it is the manufacturer and distributor of 'Ahead'?
"7. If the answer to Interrogatory No. 6 is other than an unqualified affirmative, then for each such answer state what claimant contends the true facts to be, and the name and address of each person having personal knowledge of the truth of each such fact.
"8. Does claimant admit that it is not registered with the Food and Drug Administration as a drug manufacturer or distributor?
"9. If the answer to Interrogatory No. 8 is any other than an unqualified affirmative, then for each such answer state what claimant contends the true facts to be, the Food and Drug Administration registration number of the manufacturer, and the name and address of each person having personal knowledge of the truth of each such fact."

2. "10. Describe in detail the process by which 'Ahead' is manufactured including:
(a) the exact quantitative and qualitative composition of 'Ahead';
(b) exactly how claimant determines its responses to (a). If by analysis, specify in detail each method of analysis used, the results obtained, and provide complete identification of each report, document, graph, chart, or other written, printed, or graphic matter which relates to each such analysis;
(c) the common or usual name of each chemical or other raw material used to produce 'Ahead', and the name and address of each manufacturer of such material;
(d) the date 'Ahead' was first produced;
(e) the name, address, position or title, and qualifications of each person having knowledge of the truth of each answer to this Interrogatory.
"11. State the name, address, and qualifications of each physician or other scientist who believes that 'Ahead' is safe and effective for use on the human head for the purpose of growing hair on bald and thinning areas.
"12. Give the name and address of each person known to claimant or who has communicated to claimant, by any means, any comment concerning favorable or unfavorable results of the use of 'Ahead' and if any document or memo or letter is involved, identify such letters or other documents with particularity, including their

that they "are completely irrelevant to the issues involved."

The government has lodged objections to nine[3] of claimant's forty-one interrogatories. The basis for relief from answering Interrogatories 1 through 5 is a claim of "executive privilege." Interrogatories 36 and 38 are alleged to be unrelated to the subject matter of the suit. Interrogatory 39 is objected to as too general, while Interrogatory 41 seeks information to which the claimant allegedly has no right.

### Claimant's Objections to Government's Interrogatories

In support of its contention that all of the government's interrogatories are improper and should be stricken, claimant proceeds on two separate theories. Claimant first takes the posi-

location and the name and address of the custodian of each such letter or other document.

"13. Identify each test or study known to claimant which has been performed on 'Ahead' to determine its safety or effectiveness, including:
(a) the date and location of each such test.
(b) the name, address, and qualifications of the person(s) who conducted each such test.
(c) the results obtained in each such test.
(d) the identification of each report, document, graph, or other written, printed, or graphic matter which relates to each such test."

3. "1. Provide the name and address of each officer, agent or employee of the Department of Health, Education, and Welfare known to libelant who, in the course of his official duties, has evaluated 'Ahead' and concluded that it is a drug.
"2. Provide the name and address of each officer, agent or employee of the Department of Health, Education, and Welfare known to libelant who, in the course of his official duties, has evaluated 'Ahead' and concluded that it is not a drug.
"3. Provide the name and address of each officer, agent or employee of the Department of Health, Education, and Welfare known to libelant who, in the course of his official duties, has evaluated 'Ahead' and concluded that it is a new drug.
"4. Provide the name and address of each officer, agent or employee of the Department of Health, Education, and Welfare known to libelant who, in the course of his official duties, has evaluated 'Ahead' and concluded that it is not a new drug.
"5. Provide the name and address of each officer, agent or employee of the Department of Health, Education, and Welfare known to libelant who, in the course of

his official duties, has evaluated 'Ahead' and concluded that it is a cosmetic.
"36(a) What effect on the structure of the body is intended to be accomplished by each of the [following: (a) pancake makeups; (b) lipstick; (c) rouge; (d) eye shadows; (e) face powders; (f) cold creams; (g) suntan preparations; (h) camphor ice; (i) cuticle removers; (j) depilatories; (k) hair tonics; (l) baby oil; (m) nail strengtheners; (n) shampoos; (o) shaving cream; (p) eyelash lengtheners]?
(b) If the answer to subsection (a) of this interrogatory is that any of the products so listed above are not intended to have any effect on the structure of the body, state the facts upon which that answer is based.
"38(a) What effect on any function of the body is intended to be accomplished by each of the [following: (a) pancake makeups; (b) lipstick; (c) rouge; (d) eye shadows; (e) face powders; (f) cold creams; (g) suntan preparations; (h) camphor ice; (i) cuticle removers; (j) depilatories; (k) hair tonics; (l) baby oil; (m) nail strengtheners; (n) shampoos; (o) shaving cream; (p) eyelash lengtheners]?
(b) If the answer to subsection (a) of this interrogatory is that any of the products so listed above are not intended to have any effect on the function of the body, state the facts upon which that answer is based.
"39. Provide the name and address of each person known to libellant who possesses knowledge of any relevant facts relating to this case, and for each person so named state what those relevant facts are.
"41. Provide the name and address of each person who has provided information with respect to each of the answers to the foregoing Interrogatories and relate each such person to the particular answer."

tion that public policy [4] prohibits compelling an officer or agent of a corporation to answer interrogatories propounded to the corporation in a civil suit when those answers might tend to incriminate the corporation [4a] in a parallel criminal proceeding.[5] Claimant's citations [6] are—with one exception [7]—almost wholly inapposite.[8]

█ The inappositeness of claimant's citations is not the sole flaw in its position. A corporation, it is well settled, cannot invoke the Fifth Amendment privilege. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). To recognize claimant's position, then, that a corporation is protected by some policy beyond the Fifth Amendment, is to permit the circumvention of the decisions of the Supreme Court denying the Fifth Amendment privilege to corporations. This, of course, does not mean that those individuals potentially subject to criminal responsibility must personally answer the interrogatories. Clearly, each such individual could refuse to answer claiming the Fifth Amendment in a personal capacity, United

States v. 3963 Bottles, More or Less, etc., 265 F.2d 332, 333 (C.A. 7th 1959). In fact, one case holds that where there is a showing that there is no agent nor officer who could answer the interrogatories without incriminating himself, the corporation may await the resolution of the criminal action before answering the interrogatories. Paul Harrigan & Son v. Enterprise Animal Oil Co., Inc., supra. But claimant makes no such showing here. Moreover, the better approach, approved in this Circuit by Judge Goodrich in United States v. 42 Jars, More or Less, * * * "Bee Royale Capsules", 264 F.2d 666, at page 670 (C.A. 3d 1959) is to require the corporation to appoint an agent who could answer and sign the interrogatories without fear of self-incrimination.[9]

██ Claimant's second argument is that its Fourth Amendment rights against unlawful search and seizure will be compromised if it is compelled to answer the government's interrogatories. Claimant's argument is based principally upon the 1885 case of United States v. Boyd, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed.

4. Claimant makes it unequivocally clear that the alleged public policy is outside the Fifth Amendment privilege against self-incrimination.

4a. Claimant does not contend that its officers, potential individual defendants in a criminal prosecution, can assert their privilege of self-incrimination on behalf of the corporation for their personal protection. Were such an argument pressed, it would be without merit. As noted, a corporation has no privilege against self-incrimination, and moreover, the privilege is a personal one, i. e., it cannot be exercised by one to bar inquiry of another. Equally without merit would be a contention that "public policy" would permit potential individual defendants to bar the inquiry to the corporation for the reasons set out in full in the text of the opinion.

5. A criminal proceeding arising out of the same circumstances as the civil action.

6. Claimant relies upon:
Penn v. Automobile Insurance Co., 27 F. Supp. 336 (D.Ore.1939) ;

United States v. Bridges, 86 F.Supp. 931 (N.D.Cal.1949) ;
United States v. A. B. Dick Co., 7 F.R.D. 442 (N.D.Ohio 1947) ;
United States v. Linen Supply Institute of Greater New York, 18 F.R.D. 452 (S.D.N.Y.1955).

7. Paul Harrigan & Son v. Enterprise Animal Oil Co., Inc., 14 F.R.D. 333 (E.D. Pa.1953).

8. The rationale of the cases relied upon is not that there should be protection against self-incrimination beyond the Fifth Amendment; rather, it is that the administration of the criminal law should not be jeopardized by giving the prospective defendant an opportunity to concoct an alibi to escape criminal responsibility.

9. Judge Goodrich noted that no genuine Fifth Amendment problem is presented because the person who answers for the corporation does not need to have personal knowledge. In fact, the Judge goes on to observe, "The corporation's attorney will do."

746 (1885). Granted that there may be a search and seizure question when a defendant, or prospective defendant, is compelled to produce certain documents. United States v. Boyd, supra, at 634, 6 S.Ct. 524. But where, as in this case, there is no demand for production at all, no Fourth Amendment right can be infringed.

■ Accordingly, claimant's general objections to government's interrogatories cannot be sustained. The claimant will be required to select some officer or agent not subject to criminal prosecution, to file and sign its answers to all government's interrogatories not otherwise objectionable.

■■ Alternatively, claimant objects to government's interrogatories on grounds that do not reach constitutional proportions. Claimant argues that Interrogatories 1 through 9 are improper in that they are "requests for admissions." It is well settled that Rule 33 interrogatories are to facilitate trial preparation, to obtain facts, to narrow issues, and to reduce the chance of surprise. Hickman v. Taylor, 329 U.S. 495, at 501, 67 S.Ct. 385, 91 L.Ed. 451 (1946); Stonybrook Tenants Assoc., Inc., v. Alpert, 29 F.R.D. 165, at 167 (D.C. 1961). The fact that admissions further several of these objectives is plain. Claimant does not allege that these interrogatories offend the underlying purpose of Rule 33, that they are irrelevant or that they seek privileged information. Absent such allegations, this Court sees no reason to deviate from the accepted view that Rule 33 may be used to obtain admissions. 4 Moore's Federal Practice 26.21, p. 1271; 2A Barron & Holtzoff § 766, p. 299; Stonybrook v. Alpert, supra, 29 F.R.D. p 167.

■ Interrogatory 1 is additionally complained of in that it seeks information solely within the knowledge of the government. In its brief in support of its objections, claimant asks rhetorically, "How is the claimant to know whether the copies which the libelant has made and supplied are true and accurate copies of *what the libelant named in the libel and seized in the action*?" As noted above, it is well established in the cases that the party propounding interrogatories may indeed submit interrogatories covering matters within its knowledge. Claimant's position, however, is that the information here sought is solely within the knowledge of the government and, therefore, the interrogatory is objectionable. Claimant's objection is well taken. The interrogatory asks claimant to identify the label reproduced as a copy of the label on the very cartons seized. While claimant does not contend that it does not know what was seized, it does argue persuasively that it cannot know whether the exhibit is a reproduction of one of the labels on the cartons seized or a reproduction from a carton of the product not seized. Accordingly, claimant's objection to Interrogatory 1 is sustained.

■ To Interrogatories 4 and 5, claimant bases his objection on the ground that it is improper to ask the claimant to interpret material printed on the label. Noting again, that Rule 33 interrogatories are to facilitate trial preparation, to obtain facts, to narrow issues and to reduce the chance of surprise,[10] the determinative question here, then, is whether these interrogatories serve these ends.

The Food, Drug & Cosmetic Act makes intended use and intended use as evidenced by labelling potential issues in this proceeding. 21 U.S.C. § 321(g) (1) (C), § 321(p). Consequently, interrogatories pertaining to these matters are proper. Certainly, such interrogatories would come within "any matter, not privileged, which is relevant to the subject matter involved in the pending

---

10. Hickman v. Taylor, supra, Stonybrook Tenants Assoc. v. Alpert, supra.

action." Rule 33; Rule 26(b). By exposing claimant's reading of the language on the label, the issues of intended use and intended use as reflected by the labelling would be more sharply defined and to that extent would aid in trial preparation.[11] As no other reasons for holding Interrogatories 4 and 5 objectionable are advanced and as none appear in the record, claimant's objection is denied.

Government's Interrogatories 10 through 13 are resisted as irrelevant and on the ground that they require public disclosure of trade secrets. The basis of the irrelevancy argument is that claimant denies that "Ahead" is a drug or new drug, insisting that it is a cosmetic. Therefore, claimant contends, that questions dealing with safety, efficacy or the disclosure of ingredients are irrelevant as the Act does not require a manufacturer of a cosmetic to disclose such information. In so arguing, claimant ignores the government's theory of the case. It is beyond doubt that the scope of the government's interrogatories is not limited to claimant's theory of the case. To the contrary, the law is well settled that a party may examine on its theory of the facts and law as well as that of its opponent. United States v. 216 Bottles * * * etc., 36 F.R.D. 695, at page 700 (E.D.N.Y.1965); Rule 26(b) F.R.C.P.

Claimant's contention that Interrogatories 10 through 13 are improper because the government is not entitled to public disclosure of trade secrets is better founded. However, the protection afforded trade secrets is not one of privilege; 4 Moore 26.22(3), Cities Service Oil Co. v. Celanese Corp., 10 F.R.D. 458 (D.Del.1950). In Re Natta, 264 F. Supp. 734, at page 742 (D.Del.1967). Rather, the protection is that upon a showing that the trade secrets sought are relevant and necessary, proper safeguards will attend the disclosure. United States v. 48 Jars, etc., supra, 23 F.R.D. p. 197.

The government alleges that the qualitative and quantitative composition of the product, as well as the names and addresses of those who have tested the product, go to the central issues of its case. Recalling that one of the two bases of the libel is that "Ahead" is a new drug and that the classification of an article as a drug, new drug or cosmetic, is in large part dependent upon its safety, efficacy and ingredients, the relevancy and the need for the information requested outweighs claimant's objection. See United States v. 48 Jars, etc., supra, p. 197. Therefore, claimant is directed to respond to Interrogatories 10 through 13. However, claimant's secrets will be protected from public disclosure in that the government is directed to refrain from publicizing or revealing the information contained in the answers to Interrogatories 10 through 13 without the express permission of this Court.

---

11. The Court was cited to United States v. 48 Jars, More or Less * * * Tranquilease, 23 F.R.D. 192 (D.C.1958), where objections were sustained to interrogatories substantially similar to those *sub judice*. The rationale of the *Tranquilease* case is that although intended use as reflected by the labelling is relevant, the determination of intended use shall be made solely from an analysis of the label, citing United States v. 46 Cartons, etc., 113 F.Supp. 336 (D.C.1953). This Court does not find United States v. 46 Cartons as persuasive as did the Court in *Tranquilease*. Not only is *46 Cartons* addressed solely to matters other than the scope of pre-trial discovery, but the holding there does not make extraneous all material other than the label itself. Rather, the case establishes that a claimant cannot satisfy his burden of proof at trial by arguing that he did not intend to convey the message that the label obviously conveys.

### Government's Objections to Claimant's Interrogatories

Government objects to claimant's opening interrogatories, Interrogatories 1 through 5, contending that the government should not be made to disclose persons and their opinions involved in internal policy recommendations and considerations, i. e., the government is claiming "executive privilege." The substance of the interrogatories is the call for the disclosure of the names and addresses of the government employees who tested the product "Ahead." Claimant seeks to compel answers to its interrogatories arguing that the privilege is not properly invoked.

 In asserting the privilege, the government cites no authority to establish the privilege as an absolute one. In fact, the cases make it clear that the privilege is a discretionary one that depends upon *ad hoc* considerations of competing policy claims, the policy of free and open discovery juxtaposed to the need for secrecy to insure candid expression of opinions by government employees in the formulation of government policy. Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N.D.Ohio, 1964). Thus, when the privilege is claimed, it is necessary to balance interests to determine whether disclosure would be more injurious to the consultative functions of government than nondisclosure would be to the private litigant's defense. Kaiser v. United States, supra, 157 F.Supp. p. 946.

 On the present state of the record, this Court is not called upon to perform this balancing operation. In stating its objection to claimant's interrogatories, government asserts, and nothing more, that the disclosures sought by claimant would inhibit the free expression of opinion that non-disclosure is

designed to protect. The government has not shown—nor even alleged—that those who evaluated claimant's product were involved in internal policymaking, generally, or in this particular instance. Privilege cannot be set up by an unsupported claim. The facts upon which the privilege is based must be established. Payer, Hewitt & Co. v. Bellanca Corporation, 26 F.R.D. 219, page 221. (D.Del. 1960). To find these interrogatories objectionable, this Court would have to assume that the evaluation and classification of claimant's product was a matter of internal policy formulation * * * an assumption in which this Court is unwilling to indulge *sua sponte*.

 For its part, claimant argues that the classification of its product is the heart of this libel. As such, claimant continues, it should be able to question those who have personal knowledge bearing on this issue. Claimant's showing of need never penetrates deeper than general statement. Nevertheless, because the interrogatories are not improper *per se* as a patent attempt to dislodge policy recommendations and because the government has failed to establish that its consultative functions are jeopardized —much less, involved—the claim of "executive privilege" cannot be honored.

Claimant suggests in its brief that where the government institutes the law suit it waives any right to withhold information as privileged. Inasmuch as this Court has determined that the government's claim of privilege is ill-founded, it is unnecessary to consider the alleged waiver.

Government next objects to Interrogatories 36 and 38, which ask the government to discuss the effect of lipstick, rouge, nail conditioners and other substances on the human body. Government's objection is that "the status of lipstick, rouge and the other articles cited * * * can in no remote way cast light [on the status of claimant's

product]." Moreover, the government contends, no matter what effect the government thinks these other products might have on the human body, such information cannot be helpful to discover admissible evidence, in that only the test set out in 21 U.S.C. § 321 will determine the status of "Ahead."

Despite government objections, these two interrogatories would appear to fall within the broad field of relevancy. Rule 26(b) F.R.C.P. Rule 33 F.R.C.P., 4 Moore § 33.15, p. 2225, 2A Barron & Holtzoff § 647, p. 67. Claimant contends "Ahead" is a cosmetic. The government has the burden of showing it is a drug or new drug. United States v. 47 Bottles More or Less, etc., 320 F.2d 564 (C.A. 3, 1963). If claimant can demonstrate by government answers to Interrogatories 36 and 38 that the effect of "Ahead" on the human body is no different than, for instance, the application of rouge, lipstick, face powders, all admittedly cosmetics, then it may have developed a persuasive argument against government's libel. Inasmuch as these interrogatories have this apparent purpose, they are not objectionable.

In Interrogatory 39, claimant asks the government to provide it with a list of all persons known to the government possessed of relevant information. The government lodges two objections to this interrogatory; that it is too broad and that it requires the government to make a legal conclusion. Neither objection is well founded. The objection that the interrogatory calls upon the government to make a legal conclusion, i. e., to determine what is *relevant* hardly merits discussion. A reading of the interrogatory makes it clear that the word, "relevant", is being used in its everyday sense rather than as a term of art. As such, it is not objectionable as calling for a legal conclusion. Moreover, the presence of the word "relevant" similarly used by claimant in Interrogatories 24 and 25 caused the government no concern.

The charge that the interrogatory is too broad is equally ill-founded. There is no doubt that interrogatories may seek the identity and location of persons having knowledge pertinent to the law suit. Rule 26(b) F.R.C.P.; 4 Moore 26.-19, p. 1241 and see 1966 Supplement, p. 84; 26.19, n. 2. This interrogatory asks nothing more than this; in fact, the reference to the knowledge of the government brings the interrogatory well within the language of Rule 26(b). Interrogatory 39 is, therefore, not objectionable.

Claimant's concluding interrogatory, No. 41, is also claimed to be objectionable on two grounds, that it seeks improper information and that it is unreasonably burdensome.

The cases cited by the government to establish that the claimant has no right to know the persons connected with the preparation of the answers to interrogatories are not persuasive. The case most relied upon is Maple Drive-In Theatre Corp. v. R.K.O. Corp., 23 F.R.Serv. 33.321, Case 2 (S.D.N.Y. 1956). In *Maple*, the Court—without discussion—ruled that there is no right to know "the persons in any way connected" with the preparation of the answers to interrogatories. The opinion, in neither reproducing the objectionable interrogatory nor indicating the basis of its ruling, leaves in the dark the significance of the phrase *"in any way."* Is the Court merely saying that an interrogatory is too broad when it asks for the names of persons connected with the preparation of the answers to the interrogatories, no matter how remote that connection; or is the Court saying that no matter how immediate the connection, an interrogatory is bad *per se* when it asks for the names of those who participated in the preparation of the answers to the interrogatories? Inasmuch as Judge Dimock—also in the Southern District of New York—had ruled in 1952 (four years before the *Maple* case) that such interrogatories are not bad *per se*, it

**192**

is unlikely that the Court in *Maple* was announcing an absolute rule. Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., Inc., 12 F.R.D. 531 (S.D.N.Y.1952). This view is further strengthened by the fact that the Federal Rules make only one type of interrogatory improper *per se*, that which seeks privileged information. Rule 26(b) F.R.C.P. In sum then, the government has advanced neither compelling reason nor authority for holding Interrogatory 41 objectionable on its face. When this fact is coupled with the fact that the burden of persuasion rests with the one objecting to an interrogatory, the Government's claim of clear impropriety cannot be sustained. United States v. NYSCO Laboratories, Inc., 26 F.R.D. 159, at p. 161 (E.D.N.Y. 1960). 4 Moore 33.27, p. 2415.

 In support of its contention that Interrogatory 41 is unreasonably burdensome, government complains that the information relating to this case comes from agents all over the country and that it would be a monumental task to specially analyze the reports and memoranda to determine who contributed the information used in each answer. Granted that the government's sources are disbursed and numerous; but this fact does not burden government with the task of specially collecting and analyzing its data for the purpose of answering Interrogatory 41. This Court is much impressed with the view of Judge Dimock in Caldwell-Clements, Inc. v. McGraw-Hill, supra, 12 F.R.D. at p. 538:

> "It would seem that notations or a simple record made during the preparation of the other answers would make responses to these particular questions [requesting the names of the persons preparing the answers, all sources consulted by defendant's representatives and all sources of information actually used in the preparation of the answers] a comparatively easy task."

Accordingly, government is instructed to respond to Interrogatory 41.